IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

MARCY BAYSINGER,
as guardian ad litem and
next friend for minor
child, J.R.T.,

    Plaintiff,

 vs.                CIVIL NO.  09-806  JH/LFG

CHRISTOPHER RAY LUCERO
and ALBUQUERQUE PUBLIC
SCHOOLS,

    Defendants.

## MEMORANDUM OPINION AND ORDER
## GRANTING APS' MOTION TO COMPEL

  THIS MATTER is before the Court on Defendant Albuquerque Public Schools' ("APS") Motion to Compel Production of Its Initial Disclosures and Supplementation of Discovery Requests [Doc. 106].  Plaintiff Marcy Baysinger ("Baysinger") opposes the motion.

  The motion involves three distinct groups of documents:

> [T]o produce three groups of documents: 1) attorney-client agreements involving Plaintiffs; 2) records relating to services provided by PB&J Family Services, Inc. ("PB&J"); and 3) records from Kaseman Presbyterian Hospital.

  The Court considered the motion, response and reply and determines that oral argument is not necessary.  For the reasons hereafter stated, the Court finds good cause to grant the motion.

### Attorney-Client Agreements

  Baysinger filed suit against APS and one of its employees alleging that Defendants violated the federally protected rights of a child, J.R.T.  Baysinger contends that she is bringing this action

against Defendants as J.R.T.'s "guardian ad litem and next friend." [Doc. 17, Joint Status Report, p. 2, ¶ 2].

APS sought to explore Baysinger's role or status in the case. However, questions concerning how she became involved and whether there was a contract existing between her and anyone else relating to her service as the alleged guardian or next friend were met with objections from Baysinger's attorney based on attorney-client privilege. [Id., p. 13, lines 13-20].

A party's status before the court and capacity to act are relevant to the claims and defenses under Fed. R. Civ. P. 26. Esposito v. United States, 368 F.3d 1271 (10th Cir. 2004)(it is proper to inquire into a party's capacity to sue and be sued.); *see also* 6A Charles A. Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 1541 at 321 (2d ed. 1990). Therefore, it was proper for APS to explore Baysinger's status. However, at her deposition, Baysinger conceded that she was not J.R.T.'s guardian ad litem. [Doc. 106, Ex. 2, Baysinger Deposition, p. 4, lines 18-21]. Moreover, Baysinger has not been designated or appointed as guardian ad litem by any court, nor has she been authorized by any court to prosecute this action.[1]

So, too, when asked about information given her by J.R.T. concerning the incident that gave rise to the lawsuit, Baysinger's counsel objected based on attorney-client privilege. [Id., p. 6, lines 11-14]. Again, when APS sought to obtain information about testimony Baysinger would offer at trial, Baysinger did not answer the question.

> Q. Will you be offering any testimony, if asked, regarding information that J.R.T. has communicated to you?
> A. You know, I will answer questions that the judge tells me to answer. My belief is that my duty is owed to J.R.T., and so the

---

[1] Since the issue of Baysinger's status arose at her deposition, Baysinger filed a motion to be appointed as guardian ad litem [Doc. 119]. The motion is opposed [Docs. 124, 125]. Briefing on the motion is not yet complete.

>    attorney-client privilege comes from that duty.
>    Q. I understand that, but you're going to be testifying in the case, and if you're up on the stand and you offer information that you're unwilling to share at this deposition, because you're now asserting attorney-client privilege, you would agree that would prejudice the Defendants, would you not?

[Id., p. 7, lines 14-25. ] At that point, Baysinger's counsel objected and stated while Baysinger is a witness, "I don't think she has first hand knowledge of any information that would be admissible in evidence." [Id., p. 8, lines 5-7].

Baysinger declined to answer questions contending that she had an attorney-client relationship with J.R.T., but not with J.R.T.'s mother. [Id., p. 6, lines 15-18], and due to that the privilege, declined to provide specifics about her proposed testimony.

Not having succeeded in obtaining information from Baysinger concerning her role, status, compensation, relation to J.R.T., or even the substance of her testimony, APS sought to obtain information from her by way of written discovery; for example, it sought information on contracts between Baysinger and others relating to her role. Baysinger objected to written discovery or contended there were no documents regarding her appointment as guardian ad litem. [Doc. 116, Response, p. 4]. She asserted attorney-client privilege. [Id., p. 7, lines 15-19]. However, subsequent to filing the Motion to Compel, she supplemented her answer, although not under oath as required by Fed. R. Civ. P. 33,[2] wherein she now admits that she has a contract to serve as the guardian ad litem and next friend, and is being paid $200 per hour for her services. [Doc. 116, Ex. 2].

APS responds that this eleventh-hour disclosure is of little help without information concerning the details of Baysinger's contract. Moreover, as her deposition resulted in numerous

---

[2]"When a party is an individual, the party, not the attorney, must sign a verification or affidavit as to the accuracy of the answers." Steven Baicker-McKee, William M. Janssen & John B. Corr Federal Civil Rules Handbook 857 (2008 ed.)

objections on the issue of attorney-client privilege, precious little information has been obtained concerning the evidence she will offer in this case.

A minor may neither prosecute nor defend a lawsuit in his or her own right. That is so because a child's minority constitutes a legal disability. In Re Conservatorship of Chisom, 126 N.M. 584, 973 P.2d 261 (Ct. App. 1998). Thus, an action by or against a minor may only be prosecuted by a legally appointed general guardian or guardian ad litem, or by an adult next friend. Fed. R. Civ. P. 17; *see also* Cole v. Jordon School Dist., 899 P.2d 776 (1995).

It was proper for APS to explore Baysinger's role, status and authority to prosecute this case. Esposito v. United States. Baysinger's objections based on attorney-client privilege were improper. She is not acting as the child's attorney in this case, as the child is represented by counsel of record. The Court determines that Baysinger's attorney-client objections during the course of her deposition to questions concerning her role, status, relationship with J.R.T. and the evidence that she would offer at trial were wrongfully asserted. "Evidence objected to shall be taken subject to objection." American Hangar, Inc. v. Basic Line, Inc., 105 F.R.D. 173 (D. Mass. 1985). So, too, her refusal to provide documentation concerning her status in this case and whether there were contracts existing between her and others should have been answered. Her supplement, submitted after the motion to compel was filed and not in accord with the verification requirements of Rule 33, is also inadequate.

The Court directs that, within ten days, Baysinger fully answer the interrogatories and requests for production relating to contracts between her and others, and her role, status and authority to prosecute this case.

Because Baysinger's wrongful objections precluded APS from obtaining any meaningful information so as to allow APS to properly evaluate the case for settlement or prepare for trial,

should APS so determine, the Court will authorize a re-deposition of Baysinger, at Baysinger's cost,[3] within forty-five days. Id.

### **Anna Kaseman Records**

This lawsuit seeks, *inter alia*, damages for physical, mental and emotional harm as a result of alleged sexual abuse of the minor child, J.R.T. In bringing this lawsuit, Baysinger placed J.R.T.'s physical, mental and emotional condition at issue, and, consequently, waives any privilege relating to these matters. Fox v. Gates Corp., 179 F.R.D. 303 (D. Colo. 1998).

Moreover, under the district's local rule, D.N.M.LR-Civ. 26(d)(3), Baysinger was required to provide, without Defendants having to ask, certain information relating to J.R.T. Specifically, she should have provided a listing of all healthcare providers who have seen J.R.T. for any reason during the preceding five years; she was required to identify healthcare providers by name, address and telephone; and was required to obtain physical and psychological record release forms.

Baysinger failed to disclose that J.R.T. had been seen for mental health and behavioral issues at Anna Kaseman Hospital. This failure to disclose violated Baysinger's obligations under the district's local rule. Then, when discovery of this treatment was learned by Defendants, Baysinger obstructed Defendants' discovery of those records.[4] Pursuant to the district's local rules, Baysinger was required to do more than simply identify healthcare providers. To the extent Baysinger had records in her possession, those records were to be produced. However, no records relating to the treatment J.R.T. received at Anna Kaseman were produced.

Adriana Anaya is J.R.T.'s mother. During her February 12, 2010 deposition, she admitted

---

[3]The cost would be limited to the court reporter's appearance fee.

[4]Baysinger opposed enforcement of a subpoena, served after the discovery period. Because a subpoena was deemed part of formal discovery, the Court sustained Baysinger's objection.

5

that J.R.T. was previously seen at Anna Kaseman Hospital and had been there for behavioral reasons. [Doc. 106, Ex. 4, Anaya Deposition, p. 89, lines 13-21]. When asked about the treatment and healthcare providers, Ms. Anaya stated that she had Anna Kaseman Hospital records and would provide them.

> Q. [W]ho did he receive treatment for while he was at Anna Kaseman?
> A. I don't have her name. I have the file at home.
> Q. Do you have medical records relating to his treatment at Anna Kaseman?
> A. At home, I do.
> Q. We'd like to get those.
> A. Okay.
> Q. And I'd like to get any medical records you have that relate to J.R.T.
> A. Okay.

[Id., p. 89, lines 22-25, p. 90, lines 1-7]. Baysinger's attorney objected as to the time period, but lodged no opposition to producing the records.

APS' attorney pursued the line of questioning relating to production of documents.

> Q. (By Mr. Carrico) In relation to this lawsuit, has anybody asked you to turn those documents over?
> A. Yeah.
> Q. Who was that?
> A. Lindsey. What's her name, Lindsey?
>    MS. LUCERO:   My assistant?
>    THE WITNESS: Yeah.
> Q. (By Mr. Carrico) Did you turn those records over?
> A. No, when I went, I forgot them.
> Q. Did you turn any records over?
> A. No, because apparently they already had a lot of them.
> Q. Did you tell them that you weren't turning over the records?
> A. No.
> Q. So if I'm understanding you correctly – well, did anybody ever contact you and say, hey, we didn't get the Anna Kasement records, can you please give us those?
> A. I'll be more than willing to give them --

[Id., p. 90, lines 13-25; p. 91, lines 1-6]

On cross-examination by Baysinger's attorney, the following exchange occurs:

> Q. [To Ms. Anaya] And do you recall what she asked you to do?
> A. To send the paperwork in from the –for him when he was in the hospital.
> Q. And did she explain to you that we weren't able to find those records, and we had sent out releases?
> A. Yes.
> Q. And do you plan on bringing those papers into my office?
> A. Yes, I do.

[Id., p. 144, lines 14-21].

The foregoing exchange makes clear that Ms. Anaya claimed to have information, apparently Anna Kaseman records, which she contended was in her possession and which she promised to produce. Ms. Anaya testified that she was going to produce them, but then forgot. Notwithstanding her reported promise to produce the Anna Kaseman records, no records were produced.

In response to the motion, Baysinger now contends that she cannot produce something which she does not have. Her response intimates that Ms. Anaya was confused during the course of her deposition and never really had the Anna Kaseman records. That explanation is at odds with Anaya's sworn testimony.

However, Baysinger's explanation may have validity simply because it would be unusual for a patient, or a parent of a patient, to actually have possession of hospital medical records. While the records are obtainable, they are not routinely provided to a patient by a healthcare provider after services are performed.

However, Ms. Anaya's statement that she had the records, that they were at home, and that she would produce them likely kept APS from serving a subpoena duces tecum on Anna Kaseman's record custodian until it was too late to obtain those records within the discovery period. Thus, Ms. Anaya's false representations and unfulfilled promise to produce records lulled APS into believing

that the records would be produced without the need to issue a subpoena.

The Court determines that the Anna Kaseman records are relevant to claims and defenses of the parties and should be produced. However, accepting Baysinger's explanation, it is not likely that Ms. Anaya has them in her possession. The Court will, however, authorize APS to serve an out-of-time subpoena on Anna Kaseman's record custodian to produce all of J.R.T.'s records, without exception and without limitation to any time period. The Court reopens discovery for limited purpose of serving this subpoena, and discovery will close on June 17, 2010, 45 days after entry of this order.

## **Records Relating to PB&J Family Services, Inc. ("PB&J")**

The next area of controversy involves therapist records of PB&J. All parties agree that PB&J had records relating to J.R.T. that were discoverable. Baysinger earlier objected to the production of these records because they may relate, in part, to J.R.T.'s sibling. Baysinger contends that PB&J records, including hand-written notes by Patrick Maher regarding J.R.T., no longer exist because PB&J did not retain records once they moved to a computerized system. Baysinger contends that she requested that PB&J produce records and that she, herself, cannot obtain them.

As with the Kaseman records, APS was thwarted in its efforts to obtain PB&J's records due to Baysinger's objections that the records would include information relating to a sibling. As a result of the objections, the PB&J records were not obtained.

The Court determines that PB&J records relating to J.R.T. are relevant and discoverable, and therefore will authorize APS to serve a subpoena to secure all records where J.R.T. is mentioned. To the extent that any of these records deal with siblings or others, the parties' confidentiality order will suffice to protect the interests of any other individual. As with the Anna Kaseman records, the

Court specifically reopens discovery so as to allow the subpoena to be served and records produced within forty-five days.

  IT IS SO ORDERED.

              *Lorenzo F. Garcia*
              Lorenzo F. Garcia
              United States Magistrate Judge